## JOHN PAULSEN *vs.* THE TOWN OF WILTON.

Third Judicial District, Bridgeport, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

An inference or conclusion as to ownership, drawn by the trial court from conflicting evidence, is not reviewable by this court on appeal.

The duty of repairing highways, imposed by statute upon the towns of this State, has reference to existing *de facto* highways, and is not concerned with the manner of their creation nor the means by which the public use may be stopped. And therefore the mere fact that an adjoining proprietor held the full legal title to that bit of the highway where the plaintiff was injured does not relieve the town from liability for its neglect to repair.

Section 2047 of the General Statutes, providing for action by a judge of the Superior Court before a highway is laid out within one hundred yards of a railroad track, has reference to highways established by some municipal or other public authority—not to those established by dedication and acceptance.

Argued April 18th—decided June 9th, 1905.

ACTION to recover for personal injuries caused by an alleged defective highway, brought to and heard in damages by the Superior Court in Fairfield County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $3,000, and appeal by the defendant. *No error.*

*J. Belden Hurlbutt* and *Stiles Judson, Jr.*, for the appellant (defendant).

*Charles W. Murphy*, for the appellee (plaintiff).

HAMERSLEY, J.   On the evening of November 18th, 1903, the plaintiff was walking along a highway of the defendant town, known as Portland Avenue.   At a turn of the road where it was unprotected by any railing or fence he fell down an embankment upon the road-bed of the Danbury and Norwalk Railroad Company, now operated under a lease by the New York, New Haven and Hartford Railroad Company, and thereby received severe injuries.

This action is brought upon the statute (§ 2020) to recover from the defendant damage for the injury caused by its neglect to maintain the highway in a reasonably safe condition for public travel.   The neglect consisted in the failure to erect a fence or railing, necessary to its safe condition, at the side of the road at the point where the accident occurred.   The complaint contains the allegations appropriate and necessary to the statement of such a cause of action.   The defendant suffered a default and moved for a hearing in damages.   The statute does not permit the defendant, upon such a hearing, to offer any evidence in contradiction of any allegations in the complaint, except such as relate to the amount of damages, unless he shall have given written notice, in the manner prescribed, of his intention to contradict such allegations ; nor does it permit him to deny the right of the plaintiff to maintain such action, nor to prove any matter of defense, unless he shall have given like written notice of his intention to deny such right, or prove such matter of defense.   General Statutes, § 742.   Prior to the hearing in damages the defendant gave notice of its intention to offer evidence to disprove each allegation of the complaint, except the 9th which alleges that the plaintiff served upon the defendant the notice giving the time, place, etc., of the accident, as required by statute, and also of its intention to prove contributory negligence.

It appears from the finding of the court that upon the hearing in damages the evidence produced satisfied the court of certain facts, among which are the following: In 1850 one William Mallory conveyed to the Norwalk and Danbury Railroad Company, for the purposes of a railroad right of way, a strip of land on the line of its location, 1,504 feet in length and 4 rods in width, bounded northerly and easterly on his own land and westerly by the Sugar Hollow turnpike road, a highway of the defendant town; and the railroad track upon which the plaintiff fell is laid through this strip of land. Near the northerly end of this strip of land, the Sugar Hollow turnpike, described as its westerly boundary, turns and crosses the railroad layout and then proceeds in a northerly direction on the easterly side of the layout to a station called Branchville. The accident to the plaintiff occurred at a point within 300 feet southerly of this crossing, on the easterly side of the railroad road-bed. In 1874 said Mallory conveyed to one Gilbert his land on the easterly side of and adjoining the strip of land he had sold to the railroad company. In 1875 said Gilbert opened a private road upon the land he had thus acquired from Mallory, extending from a point on the Sugar Hollow highway near the railroad crossing and on the easterly side of the track, some five or six hundred feet to the Redding town line. This road, for about 300 feet from the Sugar Hollow highway, ran southerly approximately parallel with the railroad track, and then turned in a more easterly direction. The land appropriated to the uses of this road was about 40 feet in width, and the road as used by Gilbert enabled him to reach the Sugar Hollow turnpike without crossing the railroad track. In 1890 the town of Redding established a public highway connecting with the private road of Gilbert at the town line, and thereupon Gilbert removed the fence which he had placed at the northerly end of his private road where it entered the Sugar Hollow highway and dedicated the land, 40 feet in width and some five or six hundred feet in length, previously used as a private road, to the public for

use as a public highway, and this dedication was shortly afterwards accepted by the public. The highway thus dedicated and accepted, connecting the public highway in Redding with the Sugar Hollow highway in Wilton, became a public highway of the town of Wilton prior to 1892, and at the time of the accident was and for some time prior thereto had been maintained as such public highway by the defendant. This highway, known as Portland Avenue, is the highway mentioned in the complaint, and at the time of the accident was in a dangerous and unsafe condition, by reason of the neglect of the defendant to provide a fence or railing on its southerly side at the place where the accident occurred. Upon all the evidence produced, the trial court held that the defendant had failed to establish by preponderance of evidence the facts mentioned in its said written notice, and assessed substantial damages.

The court also finds that at the turn of the road where the accident happened, the location or layout of the Danbury and Norwalk Railroad, referred to in its deed from Mallory, overlapped for a few feet the land occupied by Gilbert under his purchase of 1874, and which subsequently became a highway by dedication, and that it did not appear that Gilbert, before taking possession of this bit of land in 1875 and using it for his private road, asked or received any permission from the railroad company, its lessees, or other person, or that said railroad company or other person made any objection to his occupation of the land or made any claim to the land thus occupied, and that it did not appear by direct evidence that the said railroad company or its lessees had knowledge of the use of said bit of land for highway purposes.

The defendant claims that these facts are legally inconsistent with an ownership of this bit of land by Gilbert in 1890-92 and consequently are legally inconsistent with the conclusion that the defendant had failed to prove that Portland Avenue, within whose lines this bit of land was included, was not in fact a public highway at the time of the

accident. This claim, stated in varying forms, is the basis of the defendant's principal reasons of appeal.

We think the claim cannot be maintained. It is apparent that while the location of the railroad layout authorized prior to 1850 may be evidence of the boundary between the land conveyed in that year to the railroad company, by Mallory, and the adjoining land conveyed by him to Gilbert in 1874, it is not conclusive evidence of the ownership by Gilbert, sixteen years later, of the land he had taken and occupied in pursuance of his deed. The facts appearing in the finding indicate clearly that the evidence supported conflicting inferences as to ownership. The burden of proof was upon the defendant, and the conclusion of the court, that the defendant had failed to sustain this burden, is not by reason of anything appearing in this record either unreasonable or unlawful, and therefore is not reviewable.

But if we assume as correct the defendant's claim that in 1890, or even at the time of the accident, the full legal title to this bit of land was in the railroad company or some other person who, since 1874, had neither exercised nor claimed possession, nor in any way asserted title, we think such fact would not relieve the town from liability in this action. The governmental duty imposed upon each town, of keeping the highways within its limits safe for public travel, is imposed in respect to highways actually existing, without reference to the manner by which they came into existence or by which their use by the public may be stopped. The actual present duty is determined by the actual present existence of the highway. Acts of 1672, p. 7; *Bartram* v. *Sharon,* 71 Conn. 686, 693; *Makepeace* v. *Waterbury,* 74 id. 360. The State has the sole power and is therefore charged with the duty of providing these avenues for public travel. The power may be exercised in such manner as the legislature shall prescribe or authorize, and the State has always assumed the duty of providing for the maintenance, in a reasonably safe condition, of the highways actually existing and used in pursuance of its authority. In authorizing the use of a road for public travel the State is bound to respect

the rights of landowners whose land is burdened by such use, and if it should be discovered, after a highway has been authorized and used, that a bit of land within its lines belongs in fact to one who has not by his express consent or its equivalent acceded to its subjection to such use, the owner has his remedy as in case of property taken for public use without consent or compensation. But such unknown or unasserted title to a bit of land within the lines of a highway as actually authorized and used, cannot affect the duty to keep the highway in reasonably safe condition while thus authorized and used. The duty relates to every portion of the highway actually used for public travel under State authority. The enforcement of such duty would not rest upon the rule of equitable estoppel, although the duty springs from the universally accepted principle of moral obligation, which is sometimes invoked in support of the rule of estoppel *in pais* applied to transactions between individuals. It is this duty which the State executes through each town and it is the neglect of this duty by the town which the statute, first enacted in 1672, punishes through an action on the statute by a party injured by reason of such neglect.

It appears in the finding that Portland Avenue is within one hundred yards of the track of the Danbury and Norwalk Railroad Company, and it does not appear that prior to its dedication and acceptance a judge of the Superior Court, upon application to him and upon notice to all parties in interest, found that public convenience and necessity required such highway to be within such distance, and approved the layout of said highway in writing, and lodged his written approval thereof in the town clerk's office of the town in which the proposed highway was situated. The defendant claims that by operation of § 2047 of the General Statutes, which requires such prior finding and written approval of the layout of a highway in certain cases, the establishment of a highway by dedication, within one hundred yards of a railroad track, without such prior finding and approval is a legal impossibility, and that for this reason

the judgment appealed from is erroneous. Section 2047 does not forbid the establishment of any highway parallel to and within one hundred yards of any railroad track; on the contrary, it impliedly authorizes the layout and opening of such highway when required by public convenience and necessity. It relates to the layout of a highway by some public authority vested by law with that power, and in such case requires that the public convenience and necessity, which every highway must serve, shall be found not only by the authorities making the layout, but also by a judge of the Superior Court, and with more special reference to the element of public safety in use which enters into all such findings. *Hartford* v. *Day*, 64 Conn. 250. It applies to the establishment of a highway through a layout by some public authority regulating, in such case, the manner of determining the question of public convenience and necessity; and its operation cannot be extended, by analogy, to a radical alteration of the common law which regulates the establishment of highways by dedication, when the legislative intent to make such alteration is not expressed. *Makepeace* v. *Waterbury*, 74 Conn. 360, 364. The fact of public convenience and necessity, including the element of danger to the public in its use, is involved in the establishment of every highway ; but in the case of a highway established by dedication this fact is settled in a manner peculiar and differing from that prescribed by statutes authorizing the layout and establishment of highways, and it is therefore obvious that it is not affected by these statutes. *Noyes* v. *Ward*, 19 Conn. 250, 266; *Guthrie* v. *New Haven*, 31 id. 308, 321; *New York, N. H. & H. R. Co.* v. *New Haven*, 46 id. 257, 262.

Upon the trial, after evidence had been produced tending to show the dedication and acceptance of the highway prior to 1892, plaintiff offered in evidence a vote of the town of Wilton, passed in 1899, " that so much of Portland Avenue as lies in the town of Wilton be accepted, and the selectmen directed to repair the same." The court did not err in admitting this evidence as tending to show that

the town at the time assumed the repair of the highway, and its subsequent repair under the authority of the town.

There is no merit in the claim made, that the statutory notice of the injury annexed to the complaint is insufficient, nor in the claim that a fatal variance between the facts alleged and the facts found appears upon the face of the record.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.