GEORGE MEDER *v.* CITY OF MILFORD
(10267)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, JS.

Argued March 11—decision released May 10, 1983

*Robert M. Shields, Jr.,* for the appellant (defendant).

*Robert E. Quish,* for the appellee (plaintiff).

PER CURIAM. This appeal results from the taking of certain land by the city of Milford for a sewer and drainage easement and from the award of compensation relating thereto. The primary issue presented is

---

whether the actions of the defendant city prior to the taking constituted "acceptance" of the subject realty, thereby resulting in an effective dedication of the property.

The underlying facts are not in dispute. In 1910, a map of Westfield Park was recorded in the Milford land records, delineating lots, streets and roads. The plaintiff is the owner of two parcels of property within the Westfield Park area. The parcels are separated by the southern section of a fifty foot wide strip of land designated on the map as William Street.[1] This section, which is unimproved, unpaved and inaccessible to traffic, is what is commonly referred to as a "paper street."

The northerly 225 foot portion of William Street was paved for vehicular use and formally accepted by the Milford planning and zoning commission on November 11, 1975. No action was ever taken by the city on that portion of William Street which is contiguous with the plaintiff's land.

In 1979, the city of Milford planned to install a sewer line through that part of William Street located between the plaintiff's properties, as well as through one of the parcels. When the defendant sought to acquire an easement through the plaintiff's property, the plaintiff demanded compensation for the contemplated placement of sewage and drainage lines through William Street as well as through one of his lots.

The parties were unsuccessful in reaching an agreement. To resolve the dispute, in May of 1979 the city acquired an easement through both William Street and the plaintiff's parcel pursuant to its general power to take by eminent domain. Upon the plaintiff's request

[1] The extreme southern boundary of William Street is a public street, and the southern section is entirely encompassed on the east and west by the plaintiff's property.

for a review of the defendant's statement of compensation, the matter was brought before *Hon. Raymond J. Devlin,* state trial referee, sitting as the trial court. The parties agree that the action of the city in acquiring an easement through William Street was intended solely to bring the dedication issue before a legal tribunal, and was not a concession by the city as to liability for placing sewage and drainage lines on the disputed realty.

At no time prior to acquisition of the easement did the city enter upon the plaintiff's property or William Street to install sewer lines.

After hearing the parties' respective appraisers, reviewing the stipulation of facts entered into by the parties and viewing the property, the trial court concluded there had not been an effective acceptance of that portion of William Street which divides the plaintiff's properties. Accordingly, the plaintiff was entitled to compensation for the acquired easement through William Street as well as for the easement over his parcel. Assessing the difference in fair market value before and after the taking resulting from the entire easement to be $13,000, the court rendered judgment for the plaintiff in that amount, from which judgment the defendant appeals. We affirm. We are unpersuaded by the defendant's principal claim that the property in question was effectively dedicated to public use.

A valid dedication requires the presence of two elements: "(1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public." *Meshberg* v. *Bridgeport City Trust Co.,* 180 Conn. 274, 279, 429 A.2d 865 (1980). In the present case it is not disputed that the map delineating

William Street and filed in 1910 satisfied the first pre-requisite. The parties disagree, however, on the accept-ance issue.

A valid acceptance may be either express or implied. *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 442, 430 A.2d 25 (1980). Implied acceptance may be estab-lished either by the public's actual use of the property or by actions of the municipality. Id., 440–41.

Regardless of the mode of acceptance, it must be made within a reasonable period of time after the intent to dedicate has been manifested. *DiCioccio* v. *Wethers-field,* 146 Conn. 474, 481, 152 A.2d 308 (1959). "[R]easonable time is to be determined by considera-tion not merely of the time elapsed but of the need and convenience of the public and all of the other pertinent facts and circumstances." Id. Whether a valid accept-ance exists under the circumstances is a question of fact for the trier. *Mihalczo* v. *Woodmont,* 175 Conn. 535, 542, 400 A.2d 270 (1978). Moreover, acceptance of a portion of the dedicated realty does not necessar-ily amount to acceptance of the entire parcel. See *Mesh-berg* v. *Bridgeport City Trust Co.,* supra, 281–82.

In this appeal the defendant asserts that its actions prior to its acquisition of an easement amount to an effective acceptance. In presenting this claim, the city places great reliance on *Whippoorwill Crest Co.* v. *Stratford,* 145 Conn. 268, 141 A.2d 241 (1958). Its reli-ance on that case is misplaced. In *Whippoorwill,* the municipality adopted a resolution calling for the con-struction of sewers on the disputed realty approxi-mately five and one-half years after the offer to dedicate, as evidenced by a subdivision map, was recorded on the land records. Id., 270–71. Public funds

were allocated, and construction was completed approximately seven months later. Id., 271. Subsequently, an adjoining landowner sought injunctive relief in order to restrain the municipality from trespassing upon the property. We upheld the trial court's conclusion that "the adoption of the resolution . . . and the expenditure of public funds in constructing the sewers evidenced acceptance of that portion of the street . . . ." Id.

In the present case, the time lapse between the filing of the map and the acquisition of the easement was sixty-nine years. During this extended period there was no activity of any kind on the road. The trial court viewed the property. The evidence disclosed that the disputed realty "is just a piece of flat land with shrubs and the normal growth on undeveloped land. Some small trees, not too big, just brush and flat good buildable terrain." The city did nothing to maintain the area in any condition, and one could not determine, through visual inspection, that the property was a street.

Although the defendant places great emphasis on the fact that the property had not been assessed for tax purposes, a factor which may be relevant in determining acceptance; *A & H Corporation* v. *Bridgeport,* supra, 441; in light of the subordinate facts recited above we are unable to conclude that the defendant's actions amounted to acceptance. The plaintiff, whose ownership of that portion of William Street which divides his parcels has not been disputed, is therefore entitled to compensation as a result of the defendant's easement thereon.

We find the contentions of the defendant that the trial court erred in awarding damages and that the sum awarded, $13,000, is excessive to be without merit.[2]

There is no error.

[2] We reject the defendant's characterization of the monetary award ordered by the court as excessive and arbitrary. Our review of the record before us reveals that the defendant's appraiser valued only that portion of the property owned by the plaintiff which was directly encumbered by the easement. He did not consider William Street at all, nor in his opinion was that portion of the plaintiff's parcel which was not directly encumbered by the easement adversely affected. He therefore calculated that only 3600 square feet of property was encumbered in any manner, and assigned $1 per square foot as the value of the taking, thereby arriving at an estimated damage award of $3600.

The plaintiff's appraiser, conversely, included the diminished value of William Street before and after the taking, as well as the adverse impact on the plaintiff's parcel due to the sewer line easement. In his opinion, the adverse impact in fair market value resulting from the entire easement was $15,200. Under these circumstances, the trial court's award of $13,000 was reasonable. See *Bowen* v. *Ives,* 171 Conn. 231, 239, 368 A.2d 82 (1976); *Lynch* v. *West Hartford,* 167 Conn. 67, 76, 355 A.2d 42 (1974); *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 515–16, 172 A.2d 612 (1961).